BENEFICIAL FINANCE COMPANY
OF COLORADO, Petitioner,

v.

Gerald E. SCHMUHL and Glenda L.
Schmuhl; Centennial Savings and
Loan Association, Respondents.

No. 84SC206.

Supreme Court of Colorado,
En Banc.

Feb. 10, 1986.

Grant, McHendrie, Haines & Crouse, Charles H. Haines, Jr., McDonald & Cox, Phyllis Cox, Denver, for petitioner.

Colorado Rural Legal Services, Inc., Israel Galindo, Denver, Richard L. Emmett, Durango, for Gerald E. Schmuhl and Glenda L. Schmuhl, respondents.

Centennial Sav. and Loan Ass'n, respondent not appearing.

Janet D. Zimmerman, Sterling, for Rocky Mountain Farmer's Union, amicus curiae.

ERICKSON, Justice.

We granted certiorari to review the decision of the court of appeals in *Centennial Savings & Loan Association v. Schmuhl*, 690 P.2d 882 (Colo.App.1984), which held that documents that created a security agreement on a mobile home did not result in an implied waiver of the $6,000 statutory exemption for mobile homes which are used as residences. We reverse and remand to the court of appeals with directions to reinstate the order of the district court finding that the documents waived the $6,000 statutory residential mobile home exemption.

I.

On October 4, 1979, Gerald and Glenda Schmuhl executed a combined promissory note and security agreement in favor of Beneficial Finance Company of Colorado (Beneficial). The note was in the amount of $38,002.48. The transaction included a second deed of trust on two tracts of real property owned by the Schmuhls and a first lien on the Schmuhls' mobile home, their place of residence. The lien on the mobile home was properly perfected by notation on the certificate of title as required by sections 4-9-302(3)(b), 2 C.R.S. (1985 Supp.) and 42-6-107(2), 17 C.R.S. (1984) (prior to June 15, 1983, mobile homes were considered motor vehicles for title purposes).

The security documents consisted of the Beneficial combined note and security agreement, which included an express, general waiver of all exemptions "permitted by law to be waived," and a second deed of trust on the real property owned by the Schmuhls. In addition, the margin of the note had a separate, boxed-off area containing a detailed listing of "Personal Property Security," including the Schmuhls'

1977 Royalton mobile home. The clause also contained an express waiver of the Colorado homestead exemption for real property (§ 38–41–201.6, 16A C.R.S. (1982)) and other language reflecting a waiver.[1]

The original plaintiff in the present action was Centennial Savings & Loan Association (Centennial), beneficiary of the first deed of trust on the Schmuhls' two tracts of real property. The Schmuhls defaulted on their loan obligations to both Centennial and Beneficial. Centennial filed suit on December 7, 1981 to foreclose its first deed of trust on the real property, naming Beneficial, the party secured by the second deed of trust, as a defendant. Beneficial then cross-claimed against the Schmuhls for entry of judgment on their remaining loan obligation to Beneficial ($33,750) and to foreclose the second deed of trust on the real property and the lien on the mobile home. Beneficial's appeal here deals only with the foreclosure of the mobile home lien.

The La Plata County District Court granted summary judgment and a decree of foreclosure in favor of Beneficial on October 13, 1982. On December 15, 1982, the La Plata County Sheriff levied on and seized the mobile home. On January 6, 1983, Gerald Schmuhl filed a claim of exemption for the mobile home with the district court under the Colorado personal property exemption statute, section 13–54–102, 6 C.R.S. (1985 Supp.), which provides that: "(1) The following property is exempt from levy and sale under writ of attachment or writ of execution . . . (o)(II) one mobile home to the extent of six thousand dollars while used and occupied as a place of residence by the owner. . . ." The dis-

trict court denied the Schmuhls' exemption claim, finding that the security documents on the mobile home created an implicit waiver of the statutory exemption. The mobile home was sold at public sale on February 16, 1983.

The court of appeals, in *Centennial Savings & Loan Association v. Schmuhl,* 690 P.2d at 882, reversed the decision of the district court on the waiver issue. The court of appeals held that a general, blanket waiver of statutory exemptions in a promissory note is void as against public policy. We must determine whether the general waiver provisions of a note are against public policy and foreclose interpretation of a security agreement to carry out the obvious intent of the parties.

## II.

The court of appeals relied on *Weaver v. Lynch,* 79 Colo. 537, 246 P. 789 (1926). *Weaver* held that "a waiver in an executory contract, like a promissory note" "is void as against public policy." 79 Colo. at 539, 246 P. at 789–90. *Weaver* invalidates the Schmuhls' general waiver of exemptions contained in the loan note. However, *Weaver* does not address the issue of an implied waiver in a security agreement. Here we are faced with the question of whether the combined note and security agreement on a mobile home create an implied waiver of statutory exemptions as to the mobile home.

The issue was addressed in *In re Rade,* 205 F.Supp. 336 (D.Colo.1962). *Weaver* involved an express and general waiver in a cognovit note of all possible exemptions.

---

1. The "Personal Property Security" provision in the note reads as follows:

   *Personal Property Security*
   A check of one or more boxes below indicates a security interest under the Uniform Commercial Code has been created in the items of personal property listed alongside such checked boxes pursuant to a Security Agreement dated October 4, 1979 covering:
   . . . .
   x   Other Personal Property
   1977 Royalton Mobile Home
   Such Security Agreement secures all future advances and loans made by lender to Bor-

   rower(s), at Lender's option, within 15 years of its date.
   Proceeds of the above described collateral, including monies obtained from the payment of an insurance claim relating to property insured, also are covered.
   *Other Security*
   This note is secured by a waiver of the homestead exemption but only to the extent such waiver applies to the property covered by the Security Agreement and property covered by any Mortgage on real property.

**1296**

The waiver blanketed any statutory exemptions which the debtor could claim when judgment was entered and execution sought for failure to comply with the terms of the cognovit note.[2] However, in *Rade*, as here with the Schmuhls, the question was whether the security agreement, covering one item of personal property, created an implied waiver of the statutory exemption for that specific property only. The waiver in *Weaver* covered *all* of the debtor's property, whereas in *Rade* it covered only the debtor's automobile and in the present case *only* the Schmuhls' mobile home with language indicating an intent to waive exemptions.

Rade executed a promissory note and unrecorded, automobile chattel mortgage in favor of the Denver Public Schools Credit Union. Rade later petitioned for bankruptcy, claiming an exemption on the mortgaged car under the 1961 Colorado statute exempting $300 of the value of any vehicle used for carrying on a gainful occupation. The court denied Rade's claim and declared: "[W]here a mortgage is executed on exempt property, the prevailing view seems to consider the exemption waived by implication." 205 F.Supp. at 339.

■ We can find no authority to the contrary. The note and security agreement, when read in its entirety, could be construed to be an express waiver of the exemption. However, the widely accepted rule is that a personal property security agreement creates an implied waiver of statutory exemptions as to the secured property when the property is described with particularity as it was in these documents. For example, in *Aetna Finance Co. v. Antoine*, 343 So.2d 1195 (La.App. 1977), Louisiana held that a grant of a chattel mortgage in statutorily exempt household personal property creates an implied waiver of the statutory exemptions. The Louisiana statutory exemption in *Aetna Finance*, like the Colorado statutory personal property exemption in the present

case, was based on a state constitutional mandate for the state legislature to enact exemptions from seizure and sale. La. Const. art. 12, § 9; Colo. Const. art. XVIII, § 1.

Similarly, in *State v. Avco Financial Service, Inc.*, 50 N.Y.2d 383, 406 N.E.2d 1075, 429 N.Y.S.2d 181 (1980), the New York Court of Appeals held that a security agreement on exempt personal property is proper despite the exemption statute. Further, "the law has not forbidden a debtor to execute a mortgage upon the property so protected and thus create a lien which may be foreclosed despite the property's exempt status...." 406 N.E.2d at 1077, 429 N.Y. S.2d at 184. *See also* P. Coogan, W. Hogan, D. Vagts & J. McDonnell, 1B *Secured Transactions Under the Uniform Commercial Code* § 20AA.03[6] (1985); *In re Furlow*, 178 La. 637, 152 So. 315 (1933); *City Loan & Savings Co. v. Keenan*, 136 Ohio St. 125, 24 N.E.2d 452 (1939); *Cammarano v. Longmire*, 99 Wash. 360, 169 P. 806 (1918).

In addition, the Colorado statutes dealing with secured transactions make no provision for reservation of exemptions upon foreclosure of a security interest in personal property. *See* §§ 4–9–102(1), 4–9–501 to –507, 2 C.R.S. (1973 & 1985 Supp.).

■ We hold that Beneficial's combined note and security agreement on the mobile home resulted in an implied waiver of the Schmuhls' statutory right to exempt $6,000 of the value of the mobile home. Our decision here is limited to the personal property exemption provided for mobile homes used as residences under section 13–54–102(1)(*o*)(II), 6 C.R.S. (1985 Supp.). We do not address the waiver requirements of any other personal property exemption enumerated in section 13–54–102 nor the Colorado real property homestead exemption for mobile homes, which covers debts incurred after December 31, 1983. § 38–

---

**2.** Numerous cases are addressed to the same type of express and general waiver in an executory contract like a note. *See, e.g., Industrial Loan & Investment Co. v. Superior Court*, 189 Cal. 546, 209 P. 360 (1922); *Iowa Mutual Insur-*

*ance Co. v. Parr*, 189 Kan. 475, 370 P.2d 400 (1962); *Mayhugh v. Coon*, 460 Pa. 128, 331 A.2d 452 (1975); *Sherwin-Williams Co. v. Morris*, 25 Tenn.App. 272, 156 S.W.2d 350 (1941); *Slyfield v. Willard*, 43 Wash. 179, 86 P. 392 (1906).

41–201.6, 16A C.R.S. (1982); *see also* Colo. Const. art. XVIII, § 1.

Our holding is supported by the expectations of the parties in secured transactions. A debtor who grants a security interest in specific property to a creditor expects foreclosure of that interest upon default. As a practical matter, a determination that a statutory exemption cannot be waived by a security agreement would severely restrict the availability of much-needed credit to debtors who, in many cases, have few assets to use as collateral. In this case the title reflected the lien, and it is clear that the Schmuhls intended to waive their residential mobile home exemption when they signed the security documents.

In view of our holding on the waiver issue, we need not reach the question of the timeliness of the Schmuhls' exemption claim.

Accordingly, we reverse the judgment of the court of appeals and remand the case to the court of appeals with directions to reinstate the order of the La Plata County District Court.

DUBOFSKY, J., dissents, and QUINN, C.J., joins in the dissent.

DUBOFSKY, Justice, dissenting:

Because I disagree with the majority's conclusion that a security agreement on a mobile home creates an implied waiver of statutory exemption as to the mobile home and because the exemptions from levy and attachment are to be liberally construed with exceptions only as specified by statute, I respectfully dissent. I would remand this case to allow the district court to determine whether, as Beneficial Finance Company (Beneficial Finance) asserts, the Schmuhls failed to claim their exemption within the time period allowed by statute and whether Beneficial Finance has waived its right to challenge the timeliness of the Schmuhls' claim of exemption.

Section 13–54–102(1), 6 C.R.S. (1985 Supp.), provides that "[t]he following property is exempt from levy and sale under

writ of attachment or writ of execution: ... (*o*)(II) [o]ne mobile home to the extent of six thousand dollars while used and occupied as a place of residence by the owner...."[1] Although section 13–54–103, 6 C.R.S. (1973), provides that exempt property is subject to levy and sale for the purchase price of such property, Beneficial Finance did not assert that the loan money was used to purchase the mobile home.

The plain meaning of the statute supports enforcing the exemption against Beneficial Finance. In construing a statute, courts have a duty to ascertain and to give effect to legislative intent wherever possible. *Industrial Comm'n v. Board of County Comm'rs*, 690 P.2d 839 (Colo. 1984); *see First Nat'l Bank v. District Court*, 652 P.2d 613 (Colo.1982). In *Packard v. Packard*, 33 Colo.App. 308, 309, 519 P.2d 1221, 1222 (1974), the court refused to create an exception to the exemption statute, concluding that changing the policy regarding exemptions is for the legislature:

On its face the statute clearly applies to all writs of execution, regardless of the nature of the underlying claim. The only exception is specified in a subsequent subsection, ... which denies exemptions if the writ of execution issues on a judgment for the purchase price of the property exempted. Where the statute is unambiguous, the court is not at liberty to carve out an exception to the act's coverage.

I agree with the majority opinion that *Weaver v. Lynch*, 79 Colo. 537, 246 P. 789 (1926), "invalidates the Schmuhls' general waiver of exemptions contained in the loan note." Maj. op. at 1296. However, the majority then concludes that "Beneficial's combined note and security agreement on the mobile home resulted in an implied waiver of the Schmuhls' statutory right to exempt $6,000 of the value of the mobile home." Maj. op. at 1296. I find it perplexing that while an explicit waiver of exemptions is void as against public policy, a

**1.** Section 13–54–101(5), 6 C.R.S. (1985 Supp.), defines the value exempted as the "fair market value of any property less the amount of any

lien thereon valid as between the owner of the property and the holder of any such lien."

court may then decide that the parties have implicitly waived their exemptions and that an implied waiver is not void as against public policy. Implied waivers are even more objectionable than explicit waivers because the debtor may be unaware that he is waiving an exemption.

The policy enunciated in *Weaver*, preserving the benefits of the exemptions, applies even more clearly to implied waivers than it does to express waivers:

> [T]he rule is that the debtor cannot waive the privilege of claiming the exemption in advance. This rule is based on the theory that exemption laws are made for the benefit of the debtor and his family, and that it is against public policy for him to waive any benefits of the law in advance of the time when it is necessary for him to do so.... These [waivers] would usually be made at the time when the debtor was in need of money, and would be enforceable at some time in the future when, perhaps, he or his family would require the exemption. By doing so, he would waive practically all the benefits of the exemption law. We approve of this doctrine, and hold that such a waiver cannot be enforced.

*Id.* at 539, 246 P. at 789–90 (quoting *Industrial Loan & Inv. Co. v. Superior Court*, 189 Cal. 546, 209 P. 360 (1922)). *Weaver's* policy applies to the chattel mortgage [2] at issue in this case. Colorado's policy with respect to exemption laws is required by Colorado Constitution article XVIII, section 1. The purpose of the exemptions is to preserve the debtor's means of support, *Smith v. Pueblo Mercantile & Credit Ass'n*, 82 Colo. 364, 260 P. 109 (1927), and to preserve a home for the family. *See In re Youngstrom*, 153 Fed. 98 (8th Cir.1907). Courts must liberally construe the statutory exemptions and must favor the intent and purposes of the statute. *Penrose v. Stevens*, 100 Colo. 83, 65 P.2d 697 (1937); *Sandberg v. Borstadt*, 48 Colo. 96, 109 P. 419 (1910).

A number of other states have accepted the principle that exemptions cannot be waived. *See, e.g., Slyfield v. Willard*, 43 Wash. 179, 86 P. 392 (1906) (waiver in chattel mortgage ineffective where constitution requiring legislature to protect homesteads and other property annuls statute allowing exemptions to be waived); *Mayhugh v. Coon*, 460 Pa. 128, 331 A.2d 452, 453 (1975) ("the debtor may not, either expressly or by implication, waive the right of exemption"); *see also Industrial Loan & Investment Co. v. Superior Court*, 189 Cal. 546, 209 P. 360 (1922) (debtor cannot waive exemptions in an executory contract); *Iowa Mutual Insurance Co. v. Parr*, 189 Kan. 475, 370 P.2d 400 (1962) (same); *Sherwin-Williams Co. v. Morris*, 25 Tenn.App. 272, 156 S.W.2d 350 (1941) (same). Blanket waivers such as that included in the Schmuhls' promissory note, which waive all exemptions permitted by law to be waived, are of questionable validity. 1B P. Coogan, W. Hogan, D. Vagts & J. McDonnell, *Secured Transactions Under the Uniform Commercial Code*, § 20AA.03[6], at 20AA–17 (1985). Although the Schmuhls expressly waived all exemptions permitted by law to be waived, Colorado law does not permit the $6,000 mobile home exemption to be waived. In this case, as in *Weaver*, an implied waiver of the exemption from levy and sale is void as against public policy.

In asserting that the security agreement created an implied waiver of the statutory exemptions as to the mobile home, the majority cites *In re Rade*, 205 F.Supp. 336 (D.Colo.1962). In *In re Rade*, which did not involve an express waiver of exemptions, the debtor sold his old car and borrowed an additional $300 to purchase a new car, executing a new note for his prior debt to the credit union and for the additional $300. Thus, the loan for the car, $300, was the same amount as the $300 claimed as an exemption. The additional $300 loan arguably created a purchase money security interest, but the federal court refused to determine whether the loan created a pur-

---

**2.** The Schmuhls' promissory note contained the following language: "All parties hereto ... waive, as to this debt, any and all exemptions permitted by law to be waived." In this case, only the blanket waiver in the promissory note is in issue.

chase money security interest because the new car was purchased with money advanced by the credit union and the proceeds from the sale of the debtor's old car; instead, the federal court avoided these questions by treating the debt as an ordinary chattel mortgage.

Although the federal court in *In re Rade* acknowledged this court's opinion in *Weaver*, it inexplicably allowed the fact that Colorado statutes do not *void* a mortgage on exempt property to become the basis for its policy preference that exemption of a specific *value* of specified property from levy and sale be subject to waiver. The court's reasoning is as follows:

> Colorado has held that a stipulation in a cognovit note which waived the right of exemption was invalid as against public policy; *Weaver v. Lynch*, 79 Colo. 537, 246 P. 789, 47 A.L.R. 299 (1926). However, where a mortgage is executed on exempt property, the prevailing view seems to consider the exemption waived by implication. 22 Am.Jur. Exemptions, Section 132; 35 C.J.S. Exemptions § 106. While there seem to be no Colorado cases that stand for this proposition, the Colorado statutes do not void a mortgage on exempt property. It would seem then, that the courts of Colorado would follow this general approach and permit a valid mortgage to be executed on property that may later be claimed as exempt. Where the bankrupt has intended to create a security interest in the property which he later seems to claim as exempt, such a ruling would not be contrary to the liberal construction which must be given exemption laws as announced in *Haas v. DeLaney*, D.C.Colo.1958, 165 F.Supp. 488.

*In re Rade*, 205 F.Supp. at 339. This court is not bound by a federal court's determination of state law, and where the federal court has refused to follow an opinion of this court that an *explicit* waiver of an exemption is void as against public policy, instead holding that an *implied* waiver is sufficient to overcome statutory exemptions, I would decline to be bound by the federal court's decision.

In addition, the court in *In re Rade* relied on the general rule "that in the absence of a contrary statutory provision exempt property may be mortgaged." 205 F.Supp. at 339. In this case, a contrary statutory provision, section 13–54–102, provides that certain property is exempt from levy and sale under a writ of attachment or a writ of execution unless such property is subject to a purchase money security interest under section 13–54–103. I believe that the plain meaning of section 13–54–102(1)(*o*)(II) is that the Schmuhls' mobile home is exempt from levy or sale under a writ of attachment or a writ of execution.[3] Colorado's exemption laws do not prevent the Schmuhls from obtaining credit on any equity in their mobile home above $6,000 or credit through a purchase money security agreement. Colorado Constitution article XVIII, section 1, requires the General Assembly to pass liberal homestead and exemption laws; only the legislature may grant further exceptions to statutory exemptions such as that granted for purchase money security interests.

Beneficial Finance also asserts that the Schmuhls failed to claim an exemption for their mobile home within the statutory time limits, and the Schmuhls argue that Beneficial Finance waived its right to challenge the timeliness of their claim of exemption by failing to raise the timeliness issue before the district court. Section 13–55–101, 6 C.R.S. (1973),[4] requires that debtors claim

---

**3.** The General Assembly has also provided a homestead exemption for mobile homes, exempting $20,000 in actual cash value in mobile homes from execution and attachment. §§ 38–41–201.5, –201.6, 16A C.R.S. (1982). Because the sections became effective January 1, 1983, and do not provide an exemption for any loans, debts, or obligations incurred prior to January 1, 1983, and the debts in this case were incurred on October 4, 1979, I do not reach the question of whether the homestead exemption for mobile homes prohibits levy or attachment in this case or the effect of the homestead exemption on the exemption for mobile homes under section 13–54–102.

**4.** The General Assembly amended section 13–55–101 in 1985. § 13–55–101, 6 C.R.S. (1985 Supp.). The amendment is not material to this case.

exemptions under the provisions of section 13–54–102 "within ten days after being served with notice of such levy or seizure." Beneficial Finance asserts that it gave the Schmuhls notice, levied on, and seized the mobile home on December 15, 1982, but that the Schmuhls did not file a claim of exemption until January 6, 1983. The Schmuhls also assert that, because they, not their attorney, were served with notice, and because their attorney was not in town, their neglect was excusable. Although the Schmuhls' court of appeals' brief concedes that Beneficial Finance did raise the issue of timeliness at trial, nothing in the record indicates that Beneficial Finance raised this issue, and the district court did not rule on the timeliness of the Schmuhls' claim of exemption or on whether Beneficial Finance waived its right to challenge the timeliness of the claim of exemption. Because the timeliness of the Schmuhls' claim of exemption may determine the result of this case, I would remand the case to the district court in order to allow it to rule on this issue.

I am authorized to say that QUINN, C.J., joins me in this dissent.